## Hiram Dodge v. William B. Stanton, Executor of, &c. of Nehemiah P. Stanton.

*Transfer of notes as conditional payment: obligations of the holder.* — Where one transfers notes to another, {for property purchased, on an agreement that if the notes "are not collected, the said [purchaser]} is to make up to the said [seller] the deficiency,"— the purchaser only receives the notes as conditional payment; and if they are not paid at maturity, he is under no obligation to bring suit upon them, but may immediately sue the purchaser for the amount. Per CHRISTIANCY J.

The effect of thus receiving notes as conditional payment is simply to postpone the payment of the demand on which they are „received, until the securities. fall due. Per CHRISTIANCY J.

*Costs against estates of deceased persons.* — Where an executor resisted a claim against the testator in the Circuit Court, and after decision by that Court allowing it, removed the case to the Supreme Court, and that Court was of he opinion that there was no reasonable ground for thus resisting the claim, costs of the Supreme Court were awarded to the claimant.

*Heard May 13th. Decided May 24th.*

Case made after judgment, from Jackson Circuit.

The case was brought into the Circuit Court by appeal from an order of the Probate Court disallowing a claim presented by the plaintiff against the estate of said Stanton for the amount of three promissory notes transferred by said Stanton to the claimant, and which the latter had failed to collect. To establish his case in the Circuit Court, the plaintiff offered in evidence a written agreement, signed by himself and said Stanton, dated October 16th, 1846, as follows:

"Whereas the party of the first part is now foreclosing a certain mortgage on the undivided half of certain village lots in Ford's addition, known as lots 5, 6, 7 and 8, in Block 28; and whereas the said party of the first part has made an agreement with the party of the second part for bidding off the same at the master's sale. Now therefore, this instrument witnesseth, that in consideration of the said party of the second part complies with his covenant hereinafter specified, the said party of the first part hereby agrees that, on the sale of said premises by said master

as aforesaid, the said party of the second part may bid the same off at six hundred dollars; and if the said party of the second part does bid the same off at that price, he is to allow the said party of the first part four hundred dollars for said bid, and not the full amount of six hundred dollars. If the said party of the second party sees fit to run the same up to a higher sum than six hundred dollars, then he is to add to the said amount of four hundred dollars his additional bid over six hundred, as aforesaid. If the said party of the second part does not bid over six hundred dollars, and he allows others to bid the same off, then this agreement is of no effect. In case the said party of the second part bids the same off as aforesaid, then he is to have said master's deed on said foreclosure, on paying the said party of the second part the sum of four hundred dollars as aforesaid, or more if the same is run up higher than six hundred dollars. The payments as follows: A certain bond and mortgage executed by Morgan Case, bearing date the eighteenth day of June, 1846, for the sum of two hundred and fifty-three dollars and thirty-four cents, with interest on the same to this date. Also, a certain bond and mortgage executed by Benjamin Whitney, bearing date the 17th day of July, 1846, for the sum of sixty dollars, with interest to this date. Also, three promissory notes executed by James A. Preston, dated September 11th, 1846, for the sum of twenty-five dollars each, with interest to this date. If the said party of the second part bids a higher sum than six hundred dollars, then he is to pay the same to the said party of the second part in one and two years. It is hereby agreed by said Stanton to bid the same off at the sum of six hundred dollars on said sale as aforesaid. If the foregoing securities are not collected, then the said party of the second part is to make up to the said Dodge the deficiency. The said party of the second part

is to have only the interest which the said Dodge secures by said foreclosure."

Plaintiff then proved that, on January 18th, 1853, he recovered judgment on said Preston notes before a justice of the peace, upon which execution was issued January 26th, 1853, and returned nulla bona.

James B. Wood being sworn for the plaintiff testified that, at the date of contract, Dodge and Stanton came to the office of witness, for the purpose of leaving with witness the notes and other papers set forth in the contract. The conditions upon which they were to be left were stated to witness. Witness suggested a written contract It was assented to. Witness drew it up, and it was signed by them and witnessed. This is the contract in question. Witness held the papers for both parties. In case Stanton did not bid off the property, witness was to return papers to Stanton. Witness attended at the master's sale. Stanton bid the property in for six hundred dollars, and received a master's deed for the premises. Witness proceeded to collect said claims as they became due, except the notes. Witness made inquiries of Quimby and other persons residing in the vicinity of Preston, and was informed by them that nothing could be collected of Preston on the notes. Witness so informed Stanton several times. Witness finally said to Stanton that he must pay the amount of the notes. Stanton then requested witness to sue the notes in witness's name, and procure a judgment on four notes. If collected, witness could pay proceeds of one of the notes to Stanton, after deducting expenses of collecting. If notes were not collected of Preston, he (Stanton) would pay them to Dodge. Witness proceeded as Stanton requested. A summons was issued and served. Preston, before return day, called at witness' office. He said the notes were given for a tax title, and it had proved worthless, and he would not pay them, and did not believe that we (Livermore & Wood)

DODGE *v.* STANTON.

were smart enough to collect them of him. Witness obtained a judgment, and an execution was issued and returned unsatisfied. Dodge and Stanton after that came to witness's office together. They came, they said, for the purpose of looking their matters over. Dodge requested Stanton to pay the amount of the three notes. Stanton said he thought he could collect the judgment of Preston, requested Dodge to let him try, before he (Stanton) paid the amount due to Dodge, and if he did not collect it, he would pay the amount to witness for Dodge. Witness thinks there was some time specified, but, can not now state particularly. Dodge assented to the delay, as Stanton requested. Witness gave directions to the justice to allow Stanton to control judgment. Stanton never paid it, to witness's knowledge. The conversation between Dodge and Stanton, in witness's office, was some two or three years after the rendition of said judgment against Preston. One of the four notes upon which judgment was rendered belonged to Stanton.

The defendant then called Preston as a witness, who gave evidence tending to show that, during the years 1847-8-9 and-50, he had property subject to execution from which the amount of the judgment might have been collected.

On this evidence the Circuit Court gave judgment for the plaintiff for $145.28, and an appeal was taken on behalf of the estate.

*Livermore & Wood* for plaintiff:

The Preston notes were not received as absolute payment and satisfaction of the $400, but as conditional payment. To have them apply as absolute payment it must be made clearly and distinctly to appear that the parties so intended: it can not be implied. As conditional payment, they ceased to be payment on not being met at maturity. Dodge was under no obligation to take active

measures, [by suit or otherwise, for the collection of the notes, and could therefore lose nothing by negligence if he had been guilty of any.

*M. McGee* for defendant:

The clause in the contract, that if the securities are not collected, Stanton is to make up to Dodge the deficiency, is a simple *guaranty of the collection* of demands which Dodge was to receive in payment.

But if the demands were received as *conditional* payment only, then Dodge, by accepting them, accepted also the duty of using due diligence in their collection; and he will be responsible for any loss resulting from his neglect. Preston's testimony clearly shows that, by diligence, the demand might have been collected. The negligence of Dodge had fully discharged Stanton before the conversation testified to by Wood; and he could not be again made liable for the demand against Preston without a promise in writing.

CHRISTIANCY J.:

The three promissory notes of [Preston received by Dodge as part of the sum of four hundred dollars which Stanton was to pay for the mortgaged premises, were not received in absolute payment. The written agreement, in pursuance of which they were received, expressly provides that, "if the foregoing securities" [of which the notes were a part] "are not collected, then the said party of the second part" [said Stanton] "is to make up to the said Dodge the deficiency."

It is very clear, therefore, that the notes] were received as conditional payment only, to apply in payment, if collected, or, in other words, if paid. This had the effect to extend the payment of so much of the four hundred dollars to be paid by Stanton till the notes respectively became due: but, if not paid at maturity, Dodge was

under no obligation to bring suit upon them, but might at once resort to Stanton for the amount of each note not paid when due. If Stanton wished to have suit brought upon the notes or either of them, he might at any time have paid to Dodge the amount of the note or notes dishonored, and obtained the same as his own, and then have taken his own course for their collection.

Stanton had not indorsed the notes, nor was there any indorser or guarantor to be held liable upon them. The only party liable upon the notes was the maker. His liability was fixed and unconditional; and Dodge had therefore no duties to perform by way of demand and notice to hold him to his liability: Had the notes been indorsed or guarantied (in such a manner as to require demand upon the maker and notice of non-payment), it would have become the duty of Dodge to take all the steps necessary to hold the indorser or guarantor liable; and if he had neglected this, he might have made the paper his own, and thereby released Stanton from his liability to pay the amount.

Such, we think, is the legal effect of the agreement upon which the notes were received by Dodge; and the subsequent acts of the parties after default in payment of the notes, show that it was thus understood by both. The notes, with another which had never been turned out to Dodge, were, at the instance of Stanton, put in suit, and a single judgment obtained upon all of them in the name of Wood. Stanton, after this, when called on for payment, said he thought he could collect the amount of Preston, and wished to be allowed to try before he should pay Dodge: and if he did not succeed, he would pay the amount: witness thinks there was some time fixed for this purpose, but can not state it. Dodge assented to the delay; and directions were given to the justice to allow Stanton to control the judgment.

We think that the Circuit Court came to the proper

conclusion upon the evidence, and the judgment must be affirmed. As the costs are in the discretion of the Court (*Comp. L.* § 2940), and as we can see no reasonable ground for resisting the claim by bringing the cause to this Court, plaintiff must recover his costs here.

CAMPBELL J.:

Whether Stanton's liability depended on non-payment or failure to collect the notes described in the case, it is established by the facts; and the judgment obtained on the notes remains unsatisfied after execution duly issued on it: — *Thomas v. Dodge*, 8 *Mich.* 51. I therefore concur in affirming the judgment.

MARTIN CH. J. also concurred in the result.

MANNING J. was absent when the case was decided.